The next appeal is DACA No. 23-1400, Abutalib v. the American Citizens Protection Board. Feel free to begin. Thank you, Your Honor. May it please the Court, my name is Derek McCorkendale. We represent Dr. Jabeen Abutalib in this appeal from the MSPB. She joins us by listening on the line from Chicago today. Dr. Abutalib is an award-winning physician. She has an unblemished service record across a decade now. It's undisputed that she led the geriatric road of a VA hospital through the COVID-19 pandemic, and she did so effectively and very well. But after 27 months, she was demoted without explanation and dropped from a Table 2 to a Table 1 compensation by Dr. Cotter, her direct in-line supervisor. Well, the term demoted, it seems to me, is a demoted term in this context. She had been bent up, as I understand it, during the time she was a hospitalist. And then when she stopped being a hospitalist during that COVID period, she was returned to her status that she occupied previously. There was no further reduction in her pay, as I understand. Is that right? Yes, Judge Wesson, you're right. There was no reduction in her pay, but moving to a Table 1. Well, and no reduction from – she didn't go beyond where she was at Table 1 prior to the time that she became a hospitalist. She wasn't deprived of any rights she had at Table 1 when she was – before she was a hospitalist, right? She describes losing the ability to have further pension abilities, further promotions that are available on Table 2. So she does consider that a demotion. No, I understand that Table 2 is better than Table 1. Yes. But Table 2 sounds to me like the record reflects that that was a temporary status determined by the fact that she was doing hospitalist work. Isn't that right? There was nothing to indicate that it was temporary, Your Honor. That was the post hoc excuse given when they told her that it was a clerical mistake that had put her up to Table 2 in the first place. But there was nothing in her mind that made that that was temporary in any way. And she also felt that it was a demotion that she was returned to the geriatric and extensive care ward where she is underutilized as opposed to being a hospitalist. So she considered that a demotion in her duties as well as a substantive matter. And so those – she thought that those were – she reasonably believed that those were retaliatory actions based on whistleblowing that she had engaged in in previous proceedings as against this individual who then demoted and took her from that Table 2 to Table 1. One of the difficult questions in this case is trying to figure out whether there's jurisdiction here because the alleged whistleblowing activities are part of an EEOC complaint. One thing I'm concerned about is that your client has the burden of proof on this. And there's no complaint or pleadings from the EEOC proceeding to show – this is very important. You know, there's very limited jurisdiction for the ward in these circumstances where it's coming from an EEOC complaint. And so we don't have a complaint or any other pleadings other than the ultimate resolution with the government to try to determine what the whistleblowing activities were. Was she talking about herself? I mean, that's – you know, it seems pretty clear. There's the very fine line when – in the statute in describing the kind of whistleblowing activity that will give jurisdiction to the person. Yes, Your Honor. It is true, really. They must be distinct from Title VII discrimination actions. These whistleblowing activities must be more generalized than personnel-type grievances. And you'll see from that settlement agreement they were talking about, for example, residency interviews. She was no longer a resident. She was speaking broadly about other individuals. These are more personnel-type activities. These are employment-type activities. This had nothing to do with her personal Title VII grievances. Where is the complaint? Where are the other documents that were filed in that proceeding? She said that she has no other documents. Much of it is done online. It's a pleading process online. Much of that is built out in other ways. She had to make a further request to even find some of the internal fact-finding of the EEO. And so that has come piece by piece, but we certainly know that from those things we can draw a very reasonable inference that she was making legitimate and distinct whistleblowing accusations against Dr. Cotter there. But in this case, as I understand it, you're faulting the Board for not making those inferences based on the settlement agreement alone, right? All inferences in a pro se case should be drawn in favor of that pro se appellate. But just am I right that the inferences are being drawn primarily based on the settlement agreement? That is the one document that she had to submit. It was one of 20 documents that she or 20 pages that she provided. It was not a matter of rummaging through thousands of pages. Just to put a finer point on this, does your case rise or fall as to whether she made a 2302B8 disclosure in the EEO proceeding? Does it rise or fall based on the content of the settlement agreement? Page 211 of the appendix. Is that your whole case, I guess, as a way to... Page 211 of the appendix is the matter from which we derive the inference that there was something underneath it. Is the answer yes? The answer is yes, that is the one document that speaks to her entire EEO proceeding. Just the concern, one concern is that we've said that a protected disclosure, like a 2302B8 type of protected disclosure, has to be pretty specific and clear. And it can't just be some broad-based vague allegation. And just based on this settlement agreement alone, we don't, first of all, can't even be sure whether an allegation was made, let alone a specific one as opposed to some broad-based vague allegation. And so what I'm trying to do right now is put myself in the shoes of the administrative judge here at the Board and figure out whether she somehow legally erred by not divining that there could be and should be some kind of further investigation that there was a 2302B8 protected disclosure here that was specific enough, especially in the context of an EEO proceeding. Your Honor, the judge below never analyzed this document whatsoever. There was no discussion of it. Had that analysis... My understanding is Ms. Budula didn't discuss this settlement agreement in her filing in the response to the show-cause order. Is that right? It was directly given in response to that show-cause order. These statements do speak volumes if given the proper plausibility on their face standard. On their face, it is not implausible that there was something underlying this if the government would undertake a responsibility, a legal obligation to investigate these things which are of a nature not directed to Title VII but to employment-type issues. And so with the proper standard articulated in CAHILL and the pro se liberality for amending, this would have been something that they could have given further specificity, saying this document may have more. Can you please, with another show-cause order, spell this out? Instead, they didn't discuss this document at all. They never mentioned that EEO proceedings could, within them, have nested whistleblowing as a distinct activity. It never said any of that to her. What about page A204, which is part of her submission? Up at the top. This seems to be where she mentions the complaint and she says somebody was her direct line supervisor and she had filed an EEO complaint against him for unprofessional conduct. But that, again, it's vague. It doesn't, I'm not sure how an administrative judge would look at that and look at the settlement agreement they've taken together and understand what her EEO case was about sufficiently. Yes, it's certainly, again, a mention of the EEO complaint, but it's the allegations within that that we find the resolution. We have the end result, the one document that she still had access to that she put forward before the court, one of 20 pages, where the court could analyze those last three and say, you know, there might have been something underlying this. In fact, it was reasonable to assume the government wouldn't have undertaken that responsibility without having had some whistleblowing disclosure there. It's inartfully, perhaps, stated here that it was the filing of the EEO complaint against him, but we have the resolution of this entirely that shows us on page 211 of the appendix that there was something there, at least plausibly, non-frivolously, to ask for more. Can I ask you something else? It says on this, handwritten on this page, page 11, it says, my attorney agreed to this agreement. So why doesn't the attorney have the records of what was submitted during this proceeding? We do not have information as to those EEO proceedings. Those were in 2019. This is, of course, 2022 MSPB where she was pro se. We don't know why that is written there or what she had. But we do know she had to make FOIA requests to get the deeper documents. And those deeper documents do show that she was making clear whistleblowing statements. And if this court would look, for example, at what is submitted at page 263 in the appendix, she talks about, in 2019, I submitted a JPRS related to medication issues. That's clearly safety and public health. That is whistleblowing gold standard. She said she made that against, well, it's blocked out. And, of course, a further supplementation of the record, a further opportunity to expand on this for Dr. Budulib will allow us to see the things that she has written in this and supplement the record for her jurisdictional purposes here. Now, to be clear, these are not part of the record in this case. These were submitted and put into the appendix in the appeal, right? Judge Breslin, they were not in the record below. The board did not see these. This is not something we're asking you to take for the truth of it, but to see, rather, what might be available and what she thinks is available and out there that she could expand the record with. Rule 16-flat does allow the court to, sua sponte, have these things added, if they would like, to the record. But it is not necessary. It could be just merely to recognize what other matter could be found if they had slightly more time to work on jurisdiction with Dr. Budulib's further direction. Now, I take it that the response from the OSC we have, the lawyer for the OSC has written a letter to her outlining in some detail the claims that she made to the OSC. Do we have her complaint to the OSC? I didn't see it in the record. Again, I think a lot of that is done with online fields, and she didn't have, I don't know. Nothing in writing that she sent to the OSC? And that would surprise me, given the nature of the response, which was very detailed. Now, maybe she went through the details very carefully and extensively, but the letter I'm talking about, well, you know where it is. It's right here in the 200 through 202. Correct. It walks through a number of allegations, and it says, thank you for submitting your complaint of prohibited personal. I have inferred that that was in writing, but we don't have that, I take it, whether it was in writing or not. Your Honor, I do not understand why that was not part of the formal record submitted from the agency below. One other question. Your Honor, in that material, she has disclosure number five, in which she says that Dr. Kotter has been overpaid. That, I did not, in reading your brief, I didn't see that that was part of your brief to us as a part of her whistleblowing complaint. Is that right? I don't think it's material how much Dr. Kotter makes. What she is, what she was aggrieved and complaining about was her reduction in pay. I think she was maybe making a comparator, but I'll... I mean, I suppose you could say, at least hypothetically, that disclosures one through four are disclosures about her circumstances, why she felt that she was mistreated. But disclosure number five is a disclosure of what the VA is doing wrong out there other than things that have happened to her. But I don't understand you to be arguing that in this case. The wisdom of the Court has seen a further possibility here, and I would wholeheartedly agree with it, albeit not fully articulated in her briefing. This is one of the disclosures she was making. There are many, and many of them reach back to EEOC. Okay. You've used up all your breath of time, but we'll give you some back. Thank you. You okay? All right. May I please record? I'd like to start with Judge Bison's very last question about disclosure number five. That is a disclosure she made to OSC, but all the disclosures she made to OSC were not the basis of her appraisal claim that would serve as how an IRA complaint is formed. IRAs are based on appraisal for whistleblowing. So she made all these complaints to OSC about Dr. Cotter's pay, nepotism, and other things, but she did not claim she was being retaliated against for making those disclosures to OSC. The one claim she made to the Board and to OSC was that she was retaliated against for filing her EEO complaint. And as this Court said in Spruill and has continued to say all the way through Young, complaints of appraisal for making complaints of discrimination are not covered in IRA appeals. I'm not sure I understand the point you made right at the outset. Assuming, suppose she had said to the OSC that the entire staff, senior staff at the hospital are taking bribes from pharmaceutical companies. Clearly, the kind of whistleblower disclosure that would light up the Christmas tree at the OSC. Are you saying that if she had put that in her complaint, it wouldn't have been cognizable in her IRA appeal? No. Well, when you're talking about the OSC complaint separately, going to OSC and saying, yes, all these people are taking bribes, all kinds of other illegal activity, that would certainly qualify. So her complaint, Disclosure No. 5 about Dr. Cotter's pay, would fall into that category. It might not be as serious, but it would still be a whistleblower complaint, right? Sorry, Your Honor. It would qualify as a disclosure of a violation of law. Right. But then to be able to claim a violation of BEA, she then needs to go on and claim she was retaliated against by the agency for making that disclosure to somebody. Why would that disclosure, setting aside retaliation, why would that disclosure not be within the jurisdiction of the board when she takes an appeal in this case? Because she's… Did she limit herself just to retaliation? Because that was a claim she made to OSC after the fact. And so if she… After the fact of what? After she went to OSC in the first place. She went to OSC, and I apologize, the timeline does get kind of lewd, but it's on the way she presented claims to OSC. She went to OSC originally and presented six claims, six allegations. Five of them were essentially disclosures of things that she has seen that she believes are wrong, such as the things that happened to her, her reduction in pay, and everything else, her alleged reduction in pay. But she does not claim, then, that the BEA went and retaliated against her, which is the other part of an IRA claim. You have to claim that somebody retaliated against you for making those disclosures. She doesn't claim that her disclosures to OSC were the basis for reprisal, nor could they be, because she was essentially going to OSC and complaining about her own personnel actions. Logically, the timeline doesn't fit. The one claim she claimed reprisal for, which she's arguing is the basis of her IRA appeal, is that she was retaliated against for filing her EEO complaint in 2019, and that's the claim that is excluded from IRA jurisdiction. Now, there was a change in law between Spruill and 2019, right? Yes. So there is some short, small area in which somebody could rely on proceedings that occurred in the EEO proceedings, things that were said, allegations that were made, that would constitute proper whistleblowing made in the context of those proceedings, right? Correct, yes. And that was not the law at the time of Spruill? That was not the law at the time of Spruill. The WPEA passed in 2012. But this court, since the passage of WPEA, has continued to rely on Spruill and Sorrell and other cases about that line set forth in Spruill about IRAs excluding discrimination complaints. And if you look at the legislative history... Sure, I mean, if it's just the complaint, if it's just a discrimination claim, then that is not going to be the whistleblowing activity that falls under Section 8 of the whistleblowing statute, right? Yes, correct. So just to put a finer point on it, if during the EEO proceeding, Dr. Budulib also made a disclosure, an allegation, a specific allegation that all the management team in the hospital was taking bribes, that would qualify as a 2302B8 protected disclosure, even though it was done in the context of an EEO proceeding? So that specific question is not one that this court nor the board have actually answered yet. I'm asking you a question. So that is certainly something that is possible within the reading of the statute, because it is... So you agree, in that hypothetical, that would qualify as 2302B8 protected activity? I think based on the reading of the statute, yes, that is something that could potentially qualify. Again, this court, I think in the McLaughlin case recently cited by a petitioner in the 28J letter, expressly said it wasn't answering that question, and neither the board has not answered that question yet, and so I don't want to get ahead of either forum there. But it's certainly on the language of the statute. If it was presented in a way where it was meant to report whistleblowing, then certainly in the face of the statute, it could possibly qualify. But that's also not what this case presents, because even looking at petitioner's allegations in the light most favorable to her, what she's presented is, in the context of an EEO complaint, complaints about the quality between employees. And so the only way you can even really look at these allegations are as discrimination allegations. And even that is very generous to the petitioner, given the lack of specificity she provided. What is discrimination generally? I think even discrimination generally is covered by the board's decision in Edwards, in which an individual talked about... Is that a presidential and non-presidential? Edwards is a public decision of the board. Yes. Of the board. Yes. Okay. Where the board, an individual complained about discrimination against all African Americans, and the board said that's still just a discrimination complaint. It is not covered under B-8. But looking at petitioner's allegations here, again, she doesn't really provide much detail at all. The one affirmative statement she makes is, I was retaliated against for filing my EEO complaint. And then she, in that submission, includes a settlement agreement with a forward, fairly generic commitment to investigate potential inequality between employees in the agency. But there's no... Well, she complained about how residents are assigned an insurance standardized process. Let's assume that she did that. She met the American College of Graduate Medical Education guidelines. What is your position? If there was more specificity about how there was an actual violation of law, rule, procedure, or anything, she would certainly get closer. But the first thing she would have to do is, one, point the board to this agreement, which, as you pointed out, she did not do. And then, two, explain why this is not a complaint about equality, when she's still talking about treatment of... That I think she needed to point to the settlement agreement if it was attached to a small group of papers. But regardless, your second point is that this specific statement is not specific enough. I'm sorry, that this statement I read to you is just under D. Yes, I would say it's not specific enough because, again, looking at it in the context of how she provided it, in the context of an EEO claim, it appears to be... When you're talking about distribution, you're still talking about giving one thing to another. It's still a complaint about equality between employees, which, in the course of an EEO context, looks like a discrimination complaint. Let me circle back and make sure I understood your answer to one of my earlier questions. I think you said, with respect, again, to Dr. Cotter's point, that she made that complaint to the OSC. And were you saying that that, therefore, was not a whistleblower complaint because that's not enough to trigger whistleblower liability because it was made initially to the OSC? No, Your Honor. I apologize for the confusion. That's what I thought you were saying, so it's left me... Absolutely, Your Honor.  So, in order to present a claim of an IRA, a violation of 2302B8, you must allege, one, you made a protected disclosure, but, two, you retaliated against... No, no, let's take this out of the retaliation setting. What I'm asking is, suppose that she's saying there's retaliation, but, in one instance, she's saying, and beyond that, there's something going on here. Either Dr. Cotter's being overpaid or, to take my hypothetical, everybody in the upper management is taking bribes. And she makes that to the OSC. Is that a whistleblower protected... Is that a whistleblower complaint, I'll say first? So, that's a whistleblower disclosure. That's a whistleblower disclosure. Yes. It qualifies. Yes. And, therefore, if OSC says, ha, and blows off, she can go to the Merit Systems Protection Board with that as the centerpiece of her complaint, correct? The centerpiece of half of her complaint, and that's... I want you, right now, to take retaliation and throw it in the ocean. I don't want... I want you to focus entirely on the question of whether there is an actual whistleblower disclosure that's actionable once exhausted through the OSC. In my example. Your Honor, respectfully, I can't simply throw the retaliation part in the ocean because it's the other half of the complaint. If you just go to the board and say I made a disclosure and nothing happens... Okay, then keep it in the complaint. But it's part two of my complaint. Yes. And then she says it's the disclosure that I made to OSC. And, as to that, I'm not arguing retaliation. I'm arguing that there was a disclosure and, you know, nothing was done. So, in that instance... Is that a disclosure? Yes, there would be a disclosure, Your Honor. But then there would be nothing for the board to remedy and it would essentially just be an advisory complaint. Just to be clear, you're saying that is a disclosure, that would be a whistleblowing disclosure that satisfies 2302B8? Yes, that would be something, that would be a disclosure. Somebody's taking a bribe. That's sure, that's a disclosure. It's a B8. And then you have to go back and say, and by the way, they demoted by pay as I complained to OSC. Now, I understand. Yes. Okay, thank you. If this court has no further questions, then we request that you affirm the decision the board is dismissing for lack of jurisdiction. Thank you, Judge. Thank you. Thank you. Give counsel two minutes, please. Thank you, Your Honor. If McLaughlin shows us anything, this after arising decision, is that there are some questions here. There are shifting legal standards. And under this case, it would be suitable to remand so that the complainant can modify those jurisdictional disclosures. It's very clear that Cahill teaches us that we should freely give leave to amend when justice so requires. This isn't a one strike and you're out. A show cause order could have developed these things. They didn't even address the settlement agreement, on the contrary, they ignored it. And Dr. Budelow didn't have any idea that she should have expanded on what was in that EEO complaint to show the true whistleblowing nature of many of those disclosures. The board said nothing regarding that, and it should be remanded with further instruction to seek out and find out what was in that EEO complaint. There's at least a plausible argument, non-frivolous argument, that there were whistleblowing-directed disclosures made in that EEO proceeding. And I would ask the court to remand for that purpose. Mr. Courtsendale, are you and your co-counsel representing appellant Pro Bono for this appeal? We are. Okay. The court thanks you for your service. Thank you. Okay. This case is submitted.